Good morning, Chief Justice Smith, Judge Colliton, and Judge Murphy. Thank you for your consideration of this matter. May it please the Court, I'm intending to reserve four minutes for rebuttal, but we'll see how it goes. May it please the Court, the big issue involved in this case is the Bankruptcy Court's unprecedented decision to deny resolution of a fraudulent transfer claim in a bankruptcy case in order to facilitate a pre-petition creditor's pursuit of that claim outside of the Bankruptcy Court for its own individual benefit. There's three principles of law in the Eighth Circuit that have been recognized in the Eighth Circuit beyond that conflict with the Bankruptcy Court's outcome, and there's four additional reasons why the Bankruptcy Court should not have proceeded in this matter. First, the Eighth Circuit has recognized that the Bankruptcy Code and related federal statutes comprehensively provide for the administration of fraudulent transfer claims in a bankruptcy case. This Court has recognized in both the Nebraska State Bank v. Jones and Maylock v. Saline State Bank cases that a Chapter 7 trustee or a Chapter 11 debtor in possessions rights in avoidance actions are exclusive. The Bankruptcy Court did not address why it would deny Mr. Wigley's approach to resolving the fraudulent transfer claims in this bankruptcy. Under the Nebraska State Bank v. Jones case, the Eighth Circuit recognized that if there's a creditor who is dissatisfied in the way a debtor in possession is proceeding in administering an avoidance action, the creditor has some options. It can seek appointment of a trustee to pursue such claims. It can seek the dismissal of the bankruptcy altogether, which, in this case, Applee Lariat did pursue unsuccessfully. And last, it can seek to institute the action itself. However, later precedent, including, I think, most recently, the In re Racer Services case, indicated that a creditor pursuing an avoidance action means derivative standing within the bankruptcy case. And, of course, in the Nebraska State Bank case, that creditor involved had been trying to pursue that action on its own accord, not for the benefit of the bankruptcy estate and not for the case. What Nebraska State Bank and its progeny do not recognize is that a creditor can pursue a fraudulent transfer claim on its own accord. In this case, the bankruptcy court said, in its order, in denying the settlement of the avoidance claim at issue, while Lariat will be paid under the plan in full on its allowed claim, Lariat's interests are broader than the confines of this case and this plan. And this plan prejudices those interests. The interest that the bankruptcy court can only be recognizing there is a so-called revesting or reversionary interest that Lariat asserted in the fraudulent transfer claim. Lariat sought to preclude the administration of that fraudulent transfer claim in the bankruptcy case so it could then continue pursuing appellant Barbara Wigley beyond the bankruptcy case, even though Lariat's allowed claim in the bankruptcy case was paid in full because of a landlord termination cap under 11 U.S.C. section 502b6. The court's resolution and decision that Lariat held these additional rights conflicts directly with what the 8th Circuit had previously said in the Nebraska State Bank case and its progeny. That is one ground that requires reversal of the bankruptcy court orders in this case. The second reason requiring reversal. The bankruptcy court determined that recovering any transferred property through the fraudulent transfer action in the bankruptcy case would not benefit the estate. I want to just quote again from the order to make clear. The bankruptcy court said in paragraph 29, the infusion of cash into an estate typically results in a benefit to the estate, but this is not a typical case and a cash infusion such as proposed here does not always signify such a benefit. Here there is no benefit to the estate. The benefit is to Barbara Wigley alone. What the bankruptcy court did in that decision was wrongfully misapply section 550 of the bankruptcy code. The bankruptcy code under section 550 has been recognized to give a court a limited ability to deny processing of fraudulent transfer claims in a bankruptcy case. This court recognized in the decision Stalnecker versus DLC, however, that that limitation is very limited. In Stalnecker, this court recognized that the benefit of the estate test only measured whether or not a recovery of a fraudulently transferred asset would augment the estate. Whether it would increase the assets of the estate. In Stalnecker, the court expressly recognized that there is no relevancy whether or not the transfer actually increases distribution to estate creditors. In fact, it said benefit of the estate only refers to the calculation of the property available and collected in the estate. Creditors are on the other side of the ledger. In this case, when the bankruptcy court decided that Lariat's interests were paramount in deciding that it would not administer the fraudulently transferred property, the bankruptcy court added a test to section 550 and added language to section 550 that's not in there. And has already been rejected by this court. There is no provision in the code to factor a creditor's pre-petition interest in the claim when assessing a benefit of the state. This is second ground where the bankruptcy court erred as a matter of law in denying the settlement and administration of this fraudulently transferred claim. A third error as a matter of law. There is a line of cases, both in this circuit and elsewhere, where in fact there are instances where bankruptcy courts deny processing of a fraudulent transfer claims. Because they do not benefit the estate. One case I worked on, the Hecker case, which only reached the BAP, declined to process an avoidance claim where the property involved was fully encumbered with valid mortgages. Thus, there was no benefit to avoiding the interest in bringing it into the estate because the mortgages would need to be paid and there would be no equity. In the series of cases that say that recovering an avoidance transfer would not benefit the estate, none of them have suggested that this somehow reverts the claim back to a pre-petition creditor. In fact, the language used in most of these cases, if not all of them, suggests that it's really the transferee that receives repose when there's a determination by the bankruptcy court that recovering property would not benefit the estate. Counsel, your time's evaporating. Are you going to address the standing question? I will go directly to the standing issue, Your Honor. The standing issue in this case is distinct from the opportunity finance case. And that is because we don't have a situation where direct harm is several levels removed. The bankruptcy court decided, in that language I previously cited to you, that Lariat has rights in this claim beyond the bankruptcy case. So how is your client a agreed party? She's directly harmed by the bankruptcy court's recitation of these claims. Because either they are settled in the bankruptcy case and she keeps the property that she holds, the spell funds that were transferred to her pre-petition. Or if the bankruptcy court decides that its recovery is not for the benefit of the estate, she receives repose from the claim altogether. It's the bankruptcy court's revesting and resuscitating rights to Lariat that gives her direct harm that was directly at issue before the bankruptcy court. It wasn't opportunity finance involved, the substantive consolidation order where the real issue in that case, the direct issue was administering the estate. Certain parties complained because the ruling of substantive consolidation may have impaired certain rights they would have in future bankruptcy litigation. This case is distinct because the court had arguments that transferee receives repose here and that justifies the settlement if you're not going to administer these. And the bankruptcy court said no, Lariat has additional rights in this case. And because appellant is the direct target of those rights, that gives her the direct financial injury. It increases her burdens beyond the bankruptcy case. And one other observation I'd like to make as to standing. The legal issue of Lariat's sort of residual rights that it asserts, it is a federal issue in the first instance. It is appropriate for the bankruptcy courts and related federal courts of review to first define the scope of federal supremacy over the fraudulent transfer litigation. How are Ms. Wigley's interests protected by the bankruptcy code? She's a transferee and one of our arguments is if the recovery of the transfer wouldn't benefit the estate, then she receives repose. She's someone who dealt with Mr. Wigley pre-petition. She received a transfer from him that she would like to keep. There's been no, I mean, yes, this transfer was avoided in state court, but there hasn't been a sense that these parties want to dissolve this transfer, have any intent to dissolve this transfer. Arguably, she's a creditor. She was scheduled as a creditor in this case as well. I'm going to cede the rest of my time for rebuttal. Thank you, Your Honor. Mr. Anderson? Thank you, Your Honor. May it please the court, my name is Kurt Anderson, I represent Lariat, the appellee in this case. The court should either affirm the BAPS dismissal based on lack of standing, it's a jurisdictional question, or affirm the BAPS and bankruptcy court's decision, the alternative grounds cited by the BAP, to disallow a deeply discounted insider-driven fraudulent transfer settlement. I want to address the standing issue first because I think it's dispositive. But before we do that, if I could provide an editorial, I think the Wigley's conduct overall in this case just rewrites the book on chutzpah. Mr. Wigley was held liable for over $2.2 million in damages, committed according to the state court an actually fraudulent transfer, brought a separate action before a state court judge collaterally attacking the original judgment, was thrown out summarily on that one. And at the end of the day, we have a $788,000 plus interest fraudulent judgment transfer, which the Wigley's have seemed to be willing to try every device possible to try to avoid. The debtor said he didn't need the money, that was a key factor in Judge Constantine's decision. He testifies that I really don't need this money to fund my plan. Implication is I just want to help out my wife while I'm helping out myself here. But I want, before I get to that, I want to get to the standing issue. There's a difference between recognized, being recognized as an interested party under 1109 of the Bankruptcy Code, which basically says anybody can show up and go to the podium, and having standing to appeal. And that's been long recognized. In order to determine whether Mrs. Wigley has standing in this case, basically three questions need to be answered. Question number one, did Judge Constantine do anything to diminish Mrs. Wigley's property? Clear answer, no. Number two, did Judge Constantine do anything to increase Mrs. Wigley's burden? They did not. She faced the same issue before and after bankruptcy. As I think some courts have put it, she lost no rights. She was merely being obligated to exercise them in another form. And of course, that's the third question. Did the bankruptcy court in any way impair Mrs. Wigley's rights? No, they did not. This case is on all fours, not only with the majority, but with the dissent in opportunity finance, in the sense that, first of all, I think opportunity clearly governs. But even if Judge Bayh's dissent had provided the rule of decision here, or in that case, Mrs. Wigley would still lack standing. There is no procedural or any other sort of impediment that has been put in front of Mrs. Wigley. So I don't know what more could be said about it. Three questions, three answers, no standing, case dismissed. That's our view on that. Before I move on to the underlying issue, I would take any questions on that or take them whenever you wish to ask them. Now, going back to the actual attempt to settle the fraudulent transfer itself. Came across a quote from this court's decision in the Harstead case. Harstead versus First American Bank, 39F3898 at page 903. The court made a very interesting statement. You could just simply change the name and it would be a statement about this case. What the Eighth Circuit said was, while a direct benefit to the Harsteads themselves is crystal clear, any direct benefit that was accrued to the estate is quite difficult to discern. Let me restate that with a different name in it. While a direct benefit to the Wigleys themselves is crystal clear, any direct benefit that would accrue to a bankruptcy estate is quite difficult to discern. Now, the Eighth Circuit, I think your colleagues were being a bit wry there. What they're saying is there was no benefit to the estate and that, I think, dictated the holding there. Again, to repeat myself to some extent, but to review the reasons why Judge Constantine came to the correct result on the merits, number one, debtor testified under oath he didn't need the money, he could fund his plan without it. Number two, under the general standards for evaluating a settlement, there was no basis to discount Mrs. Wigley's liability. The case had been fully adjudicated in state court subject only to post-trial motions. So the judge said, okay, fine, go do your motions. Third, everybody's debts were being paid in full in this case, except for Lariat's pre-petition debt. Obviously, Lariat suffered a loss of some rights in the bankruptcy because it was a landlord, and there's the 502B6 limitation. But Lariat was the only one, if I could put it in generic terms, the only one getting nicked in this bankruptcy case. And the judge correctly concluded that the settlement would only benefit Mrs. Wigley as a litigation defendant, harm only Lariat. The debtor acknowledged under his view of the facts, he couldn't even plead a fraudulent transfer case. How can he settle a fraudulent transfer case in a bankruptcy when he can't even plead it? He aggressively asserted he was fully solvent at the time. So there's no constructive fraudulent transfer that he can allege. And he certainly made no effort to allege that he and his wife engaged in actual fraud, which would be the other basis for doing that. He simply could not bring a case to avoid the fraudulent transfer, and in fact, did not bring a case, and attempted to settle it based on a claim that he never even brought. Now, you can also view the case as a co-debtor release. The U.S. Bankruptcy Court in the District of Minnesota and other courts have talked about what is and is not appropriate in a co-debtor release, the Continental Airlines case out of another circuit. It didn't satisfy those standards, we addressed them in the brief. The release would not have been fair and equitable to the only adverse creditor, Lariat. Mrs. Wigley would have received no compensation. The only money she's putting up is the money she already received from her husband in the course of the bankruptcy case. To the extent it is an insider transaction, it certainly fails a heightened scrutiny test if the court chooses to apply that. We argue that in the brief, but as Judge Constantine said, under any standard, simply won't take it. I do cite portions of the brief for basically Mr. Wigley's trying to fashion bankruptcy style relief for non-debtors. First for himself in a couple of instances, and then for Mrs. Wigley. Court rightly rejected that. And the question is, this court has limited, to the extent the bankruptcy court wanted to provide any kind of equitable relief, it's very much limited. This 34 years ago, the court decided the Johnson versus First National Bank amount of video case, which did not cite in the brief, but which stands for the basic proposition that bankruptcy courts, even though they're courts of equity, they can't depart from the statutes. So I just wind up with my initial comment in the case. This whole scenario just rewrites the whole book on chutzpah. Husband and wife commits actual fraud, and then comes the bankruptcy court, and it looks for every other possible remedy and way to stop Larry from collecting a just debt. Unless the court has further questions, I am going to stop at this point. Thank you, Mr. Anderson. Mr. Brueggemann. Thank you, Your Honor. And one last point on standing I'd like to make. The difference between this case and a lot of other cases where the courts have denied appellate standing is this bankruptcy court defined and stated what the rights of the parties would be when the bankruptcy was over. It wasn't, a lot of the other cases, including opportunity finance involved, litigation bankruptcy administration issues either before or midstream with adversary proceeding litigation in the bankruptcy case. And general administration issues like the appointment of a trustee may have some indirect impact on a bankruptcy case. But as this court noted in opportunity finance, there's several steps removed from actual harm. The bankruptcy court in this case took what we asserted were Mrs. Wigley's rights and said, and Lariat's rights, and said no, that's not the case. Lariat can continue pursuing you after this bankruptcy case, even though Lariat is being paid 100 cents on the dollar of its federally allowed claim. One other point that I think is important to talk about the reversionary interest in this district circuit, there's been a lot of litigation on derivative standing. The creditor's rights to bring a claim when the trustee is not doing so in a bankruptcy case. If the expectation was that creditors would have some revesting of a fraudulent transfer claim after two years if a trustee didn't bring it, why would we be seeing all this derivative standing litigation on the eve of that two year deadline? That was the enracing services case, I believe. The motion for derivative standing was brought shortly before the trustee's deadline to do so would expire. If there was a so-called reversionary interest or revesting in this circuit, why wouldn't the creditors just wait and derivative standing would never be an issue? And finally, in conclusion, your honor, the bankruptcy laws comprehensively provide for and intend that fraudulently transferred claims are administered in bankruptcy cases. Those laws should be applied in this case just as Lariat benefited under state law in having a future judgment entered for ten years on the lease that allowed it to have a $2.2 million judgment on a claim that at the time was only $245,000 delinquent. Lariat benefited from state laws and procedures that allowed it to get that judgment. All we ask for in this bankruptcy case is that we get the laws applied as we would expect. And those include the landlord cap, which the bankruptcy court did apply. But then the bankruptcy court decided it would not apply the typical fraudulent transfer administration rules. So as to leave Lariat something a little extra in this case. The bankruptcy court acknowledges this in paragraphs 18 through 20 and footnote 8 of its order in stating that it was applying the equitable principle of too much. Meaning that it would find Mr. Wigley filed the case in good faith so it wouldn't dismiss the case. That it would apply the landlord cap. But it wouldn't apply the fraudulent transfer laws as written so as to give Lariat something a little extra. It's not the bankruptcy court's duty or obligation or even to do so in fairness to rewrite the plain language of the bankruptcy code to rebalance the party's interests. Congress has decided the party's interest in this case. The debtor in Mrs. Wigley simply followed those laws. It constitutes a malfunction of the bankruptcy process if such claims are not administered in the bankruptcy case. And if the bankruptcy court consciously bars any administration of such claims as it did here, it constitutes reversible error under any standard. The latter occurred in this case to the direct financial injury of the appellant who was denied resolution of these claims and should not be continuing to face such claims after her husband's bankruptcy case has successfully concluded. In a fully paid chapter 11 reorganization plan. The decision should be reversed and remanded for the bankruptcy court to resolve the administration of this claim. But within the parameters of the code, notably section 550, thank you. Thank you, Mr. Brueggemann. Court thanks both counsel for your argument to the court this morning. We'll take your case under advisement, render decision in due course. Thank you.